**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

YOUNG HEATING & COOLING CO.,
INC.,

Plaintiff,

v.  Case No. 06-10374

J.O.A. CONSTRUCTION CO., INC.
AND TRAVELLERS CASUALTY AND
SURETY COMPANY OF AMERICA,

Defendants.

_____/

**FINDINGS OF FACTS, CONCLUSIONS OF LAW
AND APPLICATION OF FACTS TO THE LAW**

The matter came before the court for a bench trial pursuant to Federal Rule of Civil Procedure 52. Plaintiff Young Heating and Cooling Co., Inc. ("Young") and Defendant J.O.A. Construction Co., Inc. ("J.O.A.") were fully heard at a trial that was conducted on May 7, 2007.[1] This Opinion and Order constitutes the court's findings of fact and conclusions of law required by Rule 52.

**I. FINDINGS OF FACT**

The parties stipulated to many of the facts relevant to this cause of action. The court accepts the relevant stipulated facts as a portion of its findings of fact. In addition to the stipulated facts, the court makes various additional findings of facts, which will be further analyzed in the court's application of facts to law in Section II, *infra*. In making

---

[1]While the action is technically a third-party claim, the court dispenses with third-party terminology because only Young's claims against J.O.A. remain.

these additional findings, the court has necessarily credited the testimony of the witness who so averred as opposed to instances in which another witness averred to the contrary.

1. Young was a subcontractor to J.O.A. on the construction project known as "Multi-Tenant Alterations B 10, 11 and 19 P.V. McNamara Federal Building, Detroit, Michigan."
2. Young submitted its initial bid for the mechanical installation on the project, which included sheet metal and control work as shown in the bid documents dated December 2, 2002.
3. Before Young presented its cost estimates and its bid proposal, it conducted more site investigation and focused in part on certain ductwork intended to be installed in a vertical shaft extending from the basement to the roof. Young determined that the ductwork would not fit as called for in the plans.
4. All parties involved in the project, including the General Services Administration ("GSA") contracting officer, J.O.A. estimator and Operations VP, were made aware of this shaft work issue.
5. Young bid the work for the project but specifically excluded the shaft work because there were too many unknown variables. In part, there existed nowhere for workmen to stand in the process of installing the shaft ductwork.
6. On October 17, 2003, Young entered into an Agreement with J.O.A. to undertake work on the project with the shaft work excluded.

7. J.O.A. did not issue a change order for the shaft work to provide adequate support and steel work that everyone agreed was required to allow for the ductwork installation.

8. Young obtained bids from its subcontractors to undertake the shaft work. Those bids were provided to J.O.A., which then provided them to GSA.

9. Following twelve months of meetings, subcontractor Chezcorp's bid was presented by Young and accepted by GSA and J.O.A. as the basis for the shaft work to go forward. Later, a "Memorandum of Understanding" was drafted by the contracting officer for GSA anticipating that Young would undertake the additional work for an amount not to exceed $38,000.00. The Memorandum of Understanding was in the form of electronic mail correspondence ("email") drafted by GSA sent to J.O.A. J.O.A. then forwarded the email to Young.

10. Prior to undertaking the work, Young and its subcontractors provided a detailed submission to J.O.A. of all of the shaft work they would perform.

11. Young, through its subcontractors, completed the work as contemplated and detailed in the Memorandum of Understanding.

12. Young paid Chezcorp in full and obtained a full waiver from Chezcorp for the work performed.

13. On September 10, 2004, the GSA issued a "Unilateral Change Order" for the shaft work in the amount of $10,105.92. Young did not agree to GSA's Unilateral Change Order.

14. The GSA's Memorandum of Understanding was issued on October 13, 2004, after GSA's Unilateral Change Order. Young received the emailed Memorandum of Understanding, forwarded by J.O.A., on October 14, 2004.

15. Young's subcontractor thereafter commenced work, and completed the additional work on November 12, 2004.

16. Young provided significant cost breakdowns, pricing sheets and time verification (112.5 hours per J.O.A.'s field representative) to J.O.A. in November and December 2004.

17. Young never agreed to the "Unilateral Change Order," nor did it sign such a Change Order.

18. On October 25, 2005, J.O.A. issued "Change Order 20" in the amount of $8,655.65 for the shaft work.

19. Young never agreed to "Change Order 20" nor did it sign such a Change Order.

20. On May 6, 2005, J.O.A. requested that Young produce a detail cost breakdown of the amount of their claim for the additional work performed by their subcontractor, including certified payrolls of the men performing the work, justification for the cost of the shop drawings and the project management time and material costs as requested by the GSA.

21. From time to time, Young produced some requested documents, but not all. Young was presented with an uncertain "moving target" as to what documents would suffice for these purposes.

22. The Project was completed in 2005 and both the GSA and J.O.A. "closed out" the Project on July 14, 2006.

23. J.O.A. received final payment from the GSA on that date after it was required to submit a Release of Claim on July 10, 2006.

24. On November 17, 2006, Young submitted their certified payroll for labor that had performed the additional work.

25. On December 26, 2006, Young submitted the certified payroll from Chezcorp's subcontractor, SHR Development, Inc.

26. On January 8, 2007, J.O.A. submitted the correct certified payroll to the GSA and requested the issuance of a supplemental Change Order for the amount of $27,756.08, which included the claim by Young plus the J.O.A. fee.

27. On January 12, 2007, the GSA denied the supplemental Change Order claiming, among other things, that the Unilateral Change Order in the amount of $10,105.92 was sufficient to pay for $3,745.97 cost of labor required to perform the additional work in the field.

28. Young seeks the amount quoted by Young and agreed to by J.O.A. and GSA.

29. Defendant Travelers Casualty and Surety Company of America ("Travelers") issued a Payment Bond to ensure payment to those who have furnished labor and/or materials to the Project, including Young.

30. Young has furnished labor and materials to the Project for and on behalf of J.O.A. and has not received payments in return.

31. J.O.A. accepted $10,105.92 in payment from GSA for the shaft work.

32. J.O.A. paid Young $8,655.65, its share of the unilateral Change Order amount.

33. Young claims there is now $26,899.25 owing on the project, which does not include interest as provided for under the Contract, Section 5.3.5. J.O.A.

calculates a total disputed amount of $26,048.90.

34. J.O.A. never undertook litigation under the Contract pursuant to Section 5.3.4.

35. J.O.A. was required by the contract between it and Young to submit its subcontractor's claims to the Owner, which it did.

36. Young, under the contract, was permitted to prosecute its claims in the name of J.O.A. against the GSA.

37. The GSA has not paid J.O.A. for the additional work claimed by Young except for the amount of the unilateral Change Order, which amount, less J.O.A.'s fee, has been paid to Young.

## II. CONCLUSIONS OF LAW AND APPLICATION TO THE FACTS

38. The court has jurisdiction over the federal claims in the original complaint pursuant to 40 U.S.C. § 270a and 40 U.S.C. § 3131 *et seq*.

39. Pursuant to 28 U.S.C. § 1367, the court has supplemental jurisdiction over Young's various state law claims.

40. The essence of Young's claim is breach of contract - namely, J.O.A.'s failure to pay Young for the shaft work.

41. The shaft work does not fall under the original agreement between the parties and the Memorandum of Understanding constitutes a separate enforceable contract.

42. The shaft work was specifically excluded from the contract, and constituted work given to Young other than pursuant to the terms of the contract.

43. Article 15.2 provides that "the laws of the State of Michigan shall govern the contract."

44. The court's primary goal in construing the contract is honoring the intent of the parties. *Liggett Rest Group, Inc. v. City of Pontiac*, 676 N.W.2d 633 (Mich. Ct. App. 2003). When the language at issue is clear, the court must enforce the contract as it is written. *Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251 (Mich. 2003).

45. The contractual language is unambiguous. Article 6 describes the exclusive ways to alter the scope of the contract:

> When the Contractor [J.O.A.] orders in writing, the Subcontractor [Young], without nullifying this Agreement, shall make any and all changes in the Work which are within the general scope of this Agreement. Adjustments in the Contract Price or contract time, if any resulting from such changes shall be set forth in a Subcontractor Change Order or a Subcontractor Construction Change Directive pursuant to the Contract Documents. No such adjustment shall be made for any changes performed by the subcontractor that have not been ordered by the Contractor. A Subcontract Change Order is a written instrument *prepared by the Contractor and signed by the Subcontractor* stating their agreement upon the change in the Scope of the Work, adjustment in the Contract Price or Schedule of Work. A Subcontract Construction Change Directive is a written instrument *prepared by the Contractor* directing a change in the Work and stating a proposed adjustment, if any in the Contract Price or Schedule of Work or both. A Subcontractor Construction Change Directive shall be used in the absence of agreement on the terms of a Subcontract Change Order.

(Article 6.1 (emphasis added).)

46. According to the language of the contract, the emailed "Memorandum of Understanding" does not qualify as either a subcontract "change order" or a subcontract "change directive." The Contractor, J.O.A., did not "prepare" it; the owner, GSA, did. J.O.A. merely forwarded the "Memorandum of Understanding" electronically to Young. Further, the Subcontractor, Young, did not sign the

7

document, further eroding any claim that it constituted a "Change Order" as contemplated and defined by the Contract.

47. Accordingly, the terms of the Contract, including the "pay-when-paid" clause and the requirement that Young meet certain conditions before payment is approved, do not apply to the additional shaft work.

48. The court now turns to the question of whether the Memorandum of Understanding is a separate enforceable agreement that can sustain Young's claim of breach of contract.

49. The court finds that the essential elements of a contract are present. The parties are competent to enter into agreements. *In re Erickson Estate*, 508 N.W.2d 181 (Mich. Ct. App. 1993). There was offer and acceptance - namely, shaft work for a price not to exceed $38,000. *Kamalnath v. Mercy Memorial Hosp. Corp.*, 487 N.W.2d 499 (Mich. Ct. App. 1992). Young's performance of the work, by virtue of its separate subcontract with Chezcorp, constitutes acceptance. *See, e.g., Papas v. Michigan Gaming Control Bd.*, 669 N.W.2d 326, 334 (Mich. Ct. App. 2003) ("Performance of the act constitutes acceptance of the offer, entitling the party to compensation.") Finally, there is mutuality of obligation. *Reed v. Citizens Ins. Co.*, 499 N.W.2d 22 (Mich. Ct. App. 1993).

50. J.O.A. refused to pay Young in full for the shaft work, and so breached its shaft work contract with Young.

51. Young is entitled to payment in full, less the amount J.O.A. has already paid.

52. The court finds that J.O.A.'s calculation of the amount in dispute is accurate: $26,048.90.

## III.  CONCLUSION

Based upon the findings and conclusions stated above, judgment shall be entered in favor of Plaintiff and against Defendants.  Accordingly,

IT IS ORDERED that the parties submit a proposed judgment, jointly approved as to form, not later than **May 25, 2007.**


      S/Robert H. Cleland  
ROBERT H. CLELAND  
UNITED STATES DISTRICT JUDGE

Dated:  May 15, 2007


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 15, 2007, by electronic and/or ordinary mail.

      S/Lisa Wagner  
Case Manager and Deputy Clerk  
(313) 234-5522